James E. Doherty (*Pro Hac Vice*)
**ALCOTT LAW GROUP, PLLC**
205 East 42nd Street, 16th Floor
New York, NY 10017
Tel.: 646-844-0147
Fax: 646-844-3879
JEDohertylaw@gmail.com
dalcott@alcottlaw.com
mrosenthal@alcottlaw.com

*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Square Foot Gardening Foundation, Inc., A New York Not-For-Profit Corporation, | No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Western Organics, Inc., an Arizona Corporation, d/b/a Gro-Well Brands, Inc.; Alan Langer, an individual; and John Does 1-10, | (Jury Trial Demanded) |
| Defendants. | |

Plaintiff Square Foot Gardening Foundation, Inc. (the "Foundation" or "Plaintiff"), by and through its attorneys, the Alcott Law Group, PLLC, for its Complaint against Defendants Western Organics, Inc. d/b/a Gro-Well Brands, Inc. ("Gro-Well") and Alan Langer ("Langer") (Gro-Well and Langer are collectively referred to herein as "Defendants") in this action, alleges as follows:

### NATURE OF THE ACTION

1.    This action seeks monetary and injunctive relief for: (1) willful violations of the Foundation's intellectual property rights, including claims for federal trademark infringement, unfair competition and false designation of origin pursuant to the Lanham Act; and (2) state law claims sounding in breach of contract, breach of the covenant of

good faith and fair dealing, trademark infringement, unfair competition, deceptive practices, conversion, unjust enrichment, and for an accounting.

## THE PARTIES

2.     The Foundation is a corporation organized pursuant to New York's Not-for-Profit Corporation Law and is recognized by the federal government as a 501(c)(3) private foundation, with its principal place of business located in Halesite, New York.

3.     Upon information and belief, Defendant Gro-Well is a corporation organized pursuant to the laws of Arizona, with a principal place of business at 420 East Southern Avenue, Tempe, Arizona 85282.

4.     Upon information and belief, Defendant Langer is Gro-Well's Chairman of the Board of Directors; its former President; and an Arizona resident located in the greater Phoenix metropolitan area.

5.     At all relevant times herein, Langer has been an active, dominant force in Gro-Well's business operations and has controlled and exercised powers or influence over Gro-Well at least to such an extent that Langer authorized, directed and/or participated in the actions referenced herein that form the basis for the Foundation's claims against the Defendants.

6.     John Does 1-10, captioned above, represent entities or individuals, not yet discovered, who contributed to the acts described herein and who may be liable to Plaintiff for damages related to the nature of this action.

7.     Upon information and belief, at all relevant times, each of the defendants, including each "John Doe" defendant, was the agent, servant, employee, joint-venturer, and/or partner of each of the other defendants.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action under 15 U.S.C. §1121 and 28 U.S.C §§1331, 1332, 1338, and 1367.

9.     Venue in this judicial district and the exercise of personal jurisdiction over the Defendants by this Court are proper pursuant to  28 U.S.C. §1391(b) and because, among

other reasons: (1) Defendants are located in this judicial district; (2) a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district; and (3) Defendant Langer executed an agreement on behalf of Defendant Gro-Well giving this Court personal jurisdiction over Defendant Gro-Well and authorizing this Court as an appropriate venue for this dispute.

## SUMMARY OF FACTS

### *Mel Bartholomew, His Foundation, and its Trademarks*

*Mel Bartholomew and Square Foot Gardening*

10.    In or around 1975, Mel Bartholomew ("Bartholomew") sold his engineering and construction business and created "Square Foot Gardening," a revolutionary approach to sustainable gardening that taught people how to grow vegetables in small spaces such as backyards, rooftops, patios and community gardens throughout the world.

11.    Bartholomew's "Square Foot Gardening" method condensed the area traditionally required to grow vegetables from long rows that required large amounts of soil, water and attention to a much more manageable matrix of densely compact squares that allowed people and communities with limited resources, time, and expertise to grow vegetables and feed themselves with healthier foods using only minimal effort.

12.    Bartholomew initially promoted his new method by selling gardening books, tools, products, and other gardening services, thus creating a "Square Foot Gardening" brand.

13.    The "Square Foot Gardening" books have become some of the best-selling gardening books of all time.

14.    Bartholomew also hosted a very popular public television show in the 1980s that ran for six years.

*The Square Foot Foundation*

15.    Encouraged by his growing success and notoriety, Bartholomew formed the Foundation in 1984 as a not-for-profit charitable New York corporation to extend the reach of his "Square Foot Gardening" brand and as a means to benefit impoverished and underprivileged persons everywhere.

16.    Bartholomew also formed other entities related to "Square Foot Gardening," including the not-for-profit Mel Bartholomew Foundation, Inc., d/b/a Square Foot Gardening Foundation, in Eden, Utah (the "Utah Corporation").

17.    The Utah Corporation initially secured trademark registrations from the United States Patent and Trademark Office ("USPTO") and entered into certain agreements in connection with the "Square Foot Gardening" brand.

18.    Bartholomew often treated the Foundation and the Utah Corporation as a single enterprise for operational purposes.

19.    After Bartholomew's death on April 28, 2016, the Foundation has continued its mission with renewed vigor led by Bartholomew's family and trusted advisors.

20.    The Foundation, either in its own right or as assignee of or successor in interest to the Utah Corporation, is now the owner and/or rights holder of all relevant agreements, trademarks and registrations referenced in this action.

*The Foundation's Trademarks*

21.    The Foundation owns several federally registered and common law trademarks, identified in paragraphs 22 and 23, below, along with all rights associated with them, including all rights that either attach upon registration or which are acquired through use under common law (collectively these trademarks are the "Foundation Trademarks").

22.    The Foundation owns the following United States trademark registrations featuring "Square Foot Gardening" and the underlying marks referenced in those registrations ("Foundation's Registered Marks"):

    a.    The SQUARE FOOT GARDENING word mark, registered on the USPTO's Principal Register on February 14, 2012, Registration Number 4,097,739, in: (i) International Class 21 for use in connection with planters for flowers and plants at least as early as January 3, 2011; and (ii) International Class 35 for use in connection with online retail store services featuring gardening tools, gardening soils, and plants at least as early as January 3, 2011, is still active, not revoked and not canceled.  A true and

correct copy of Plaintiff's Registration Certificate for its SQUARE FOOT GARDENING mark is attached hereto as **Exhibit 1**;

b.    The ALL NEW SQUARE FOOT GARDENING logo, registered on the USPTO's Principal Register on July 26, 2011, Registration Number 4,002,068, in: (i) International Class 21 for use in connection with raised garden beds, namely, raised containers for planting contained gardens and raised garden planters at least as early as January 1, 2004; and (ii) International Class 41 for use in connection with the arrangement of training courses in teaching institutes and teaching in the field of raised bed gardening at least as early as January 1, 2004, is still active, not revoked and not canceled. A true and correct copy of Plaintiff's Registration Certificate for its ALL NEW SQUARE FOOT GARDENING logo is attached hereto as **Exhibit 2**; and

c.    The SQUARE FOOT GARDENING word mark, registered on the USPTO's Principal Register on November 18, 2012, Registration Number 4,097,739, in International Class 41 for use in connection with conducting lectures and classes on gardening, is no longer active, however the Foundation's claim for ownership of this mark in connection with the services described above is supported by other trademark application(s) and/or actual use.

23.    The Foundation also owns the following common law trademarks, all of which have obtained secondary meaning, are source-identifying, and represent the goodwill of the Foundation, and for which the Foundation is seeking federal trademark registrations through applications pending before the USPTO:

a.    The "ALL NEW SQUARE FOOT GARDENING" word mark, serial number 87655972, in: (a) International Class 01 for use in connection with potting soil at least as early as November 1, 2011; and (b) International Class 16 for use in connection with books in the field of gardening and cook books at least as early as February 14, 2006;

b. The "SQUARE FOOT GARDENING" word mark, serial number 87655986, in International Class 16 for use in connection with books in the field of gardening and cook books at least as early as December 31, 1975; and

c. A stylized mark for "ALL NEW SQUARE FOOT GARDENING" consisting of a green square containing the wording "ALL NEW" in white, "SQUARE FOOT" in yellow, and "GARDENING" in white, with the perimeter of the square being yellow rulers with black lines, serial number 87656002, in: (a) International Class 01 for use in connection with potting soil at least as early as October 1, 2011; and (b) International Class 16 for use in connection with books in the field of gardening and cook books at least as early as February 14, 2006.

24.    The Foundation is also the owner of a stylized logo for "SQUARE FOOT GARDENING FOUNDATION" that is the subject of an intent to use trademark application pending before the United States Patent & Trademark Office, serial number 87553336, in: (a) International Class 36 for use in connection with charitable fundraising to support growing food and farming with limited resources and eco-sustainability; providing grants for the development of methods for growing food and farming with limited resources and eco-sustainability; and providing grants for introducing methods for growing food and farming with limited resources and eco-sustainability to communities in need; and (b) International Class 41 for use in connection with educational services, namely, conducting programs in the field of gardening; educational services, namely, conducting programs in the field of growing food and farming with limited resources; educational services, namely, conducting programs in the field of eco-sustainability; educational services, namely, developing curriculum for others in the field of gardening; educational services, namely, developing curriculum for others in the field of growing food and farming with limited resources; educational services, namely, developing curriculum for others in the field of eco-sustainability; educational services, namely, providing displays and exhibits in the field of gardening; educational services, namely, providing displays and exhibits in the field of growing food and farming with limited

resources; educational services, namely, providing displays and exhibits in the field of eco-sustainability; educational services, namely, providing online instruction in the field of gardening; educational services, namely, providing online instruction in the field of growing food and farming with limited resources; educational services, namely, providing online instruction in the field of eco-sustainability; educational services, namely, providing classes, seminars, and workshops in the fields of gardening, growing food and farming with limited resources, and eco-sustainability; magazine publishing; publishing e-books in the field of gardening; publishing e-books in the field of growing food and farming with limited resources; publishing e-books in the field of eco-sustainability; book publishing; film and video production; providing information, news and commentary in the field of current events relating to gardening; providing information, news and commentary in the field of current events relating to growing food and farming with limited resources; providing information, news and commentary in the field of current events relating to eco-sustainability; providing a web site that features informal instruction on gardening; providing a web site that features informal instruction on growing food and farming with limited resources; and providing a web site that features informal instruction on eco-sustainability.

### *The Foundation and Gro-Well*

25.     According to its website, www.gro-well.com, and other public records, Gro-Well was formed as a result of a 2006 merger between Western Organics, Inc. (signatory to the License Agreement, defined herein) and Benick Brands and is a company that "operates six manufacturing plants in five states and markets a complete line of natural and organic lawn and garden products . . .".

26.     Upon information and belief, Gro-Well sells products through its website and other retail channels, such as Home Depot, Lowes, Walmart, ACE and True Value.

27.     On or about October 1, 2011, the Utah Corporation and Gro-Well entered into a trademark license agreement (the "License Agreement") in connection with the sale of

7

certain soil items under the "Square Foot Gardening" mark.  A true and correct copy of the License Agreement is annexed hereto as **Exhibit 3**.

28.    Through the License Agreement, the Foundation granted to Gro-Well an exclusive, nontransferable and personal license to use the Foundation's "Square Foot Gardening" trademark and Bartholomew's name and likeness solely "in connection with the production, distribution, sale and advertisement of 'Licensed Products.'" The License Agreement defined "Licensed Products" as being "soil bags produced and related products, distributed, or sold by Licensee in conjunction with the Mark ["Square Foot Gardening"]" in the following channels: "Retail Stores in the United States and Canada." In exchange for the foregoing, Gro-Well was obligated to pay the Foundation a license fee that consisted of fixed annual and variable quarterly payments (based on a sliding scale of net sales totals) during the term of the License Agreement.

29.    The License Agreement did not specifically identify any products as being "related products" and, upon information and belief, Gro-Well never paid the Foundation any fees or royalties for products other than soil.

30.    With respect to compensation due to the Foundation for Gro-Well's use of the "Square Foot Gardening" mark, the License Agreement mandated that Gro-Well make the following payments to the Foundation:

> 3.4    Licensee <u>shall pay</u> Licensor <u>a yearly Licensing fee of $15,000</u>
> . . .; and

> 4.1    Licensee <u>shall pay</u> to Licensor <u>royalties</u> in the amount of:

>> .30 cents per bag from 0-99,000 bags sold . . .
>> .20 cents per bag from 100,000-199,000 bags sold . . .
>> .10 cents per bag from 200,000+ bags sold . . .
>> (emphasis added).

31.    Further pursuant to the License Agreement, Gro-Well was obligated to provide written statements to the Foundation and pay all licensing fees "within 60 days," at or after "the end of each quarter."

32.    In the event that Gro-Well failed to make timely license fee payments to the Foundation, the License Agreement mandates that "A <u>late fee</u> of $35 + 1% month of the invoice <u>shall be added</u> if not postmarked by the due date." (emphasis added).

33.    The License Agreement called for an initial ten (10) year term, however, Paragraph 10 of that agreement sets forth an early termination provision that reads, in pertinent part, as follows:

> 10.2    **<u>Licensor shall have the right to terminate this Agreement effective immediately upon Licensee's  receipt of written notice from licensor</u>** in the event  of any affirmative act of insolvency by Licensee, or  upon the appointment of any receiver or trustee to  take possession of the properties of Licensee or **<u>upon the</u>** winding-up, **<u>sale</u>**, consolidation, merger, or any  sequestration by governmental authority **<u>of Licensee</u>**, **<u>or upon any breach of any of the duties and obligations of Licensee under this Agreement</u>**.  (emphases added).

34.    Upon termination of the License Agreement, Gro-Well's license to use the Foundation Trademarks immediately expires and Gro-Well may only sell off existing inventory as follows:

> 11.1    <u>Upon expiration or termination of this Agreement, Licensee agrees to  immediately stop production of  Licensed Products</u> and will continue to sell any remaining inventory of Licensed Products subject  to Article 4 [Licensee's obligations to make  payments to the Foundation based on net sales].  <u>After all remaining inventory is sold, Licensee agrees  to discontinue all use of the Mark and any term  confusingly similar thereto, to destroy all printed  materials bearing any of the Mark [sic]</u>, and that all rights  in the Mark and the good will connected therewith shall remain the property of Licensor. (emphases added).

35.    At no time during the term of the License Agreement did the parties ever modify, amend, supplement or waive any part of the License Agreement pursuant to the terms of that agreement.

9

36.     Upon information and belief, Global Environment Fund, a private equity firm based in Bethesda, MD, purchased Gro-Well, in its entirety, on or about June 20, 2017. Defendants never notified the Foundation of this sale.

*Gro-Well's Myriad Breaches of the License Agreement*

37.     From the outset, and throughout the entire term of the License Agreement, Gro-Well regularly breached, among other terms, the "Licensed Products," payment, accounting and audit provisions of the License Agreement.

38.     Specifically, Gro-Well, among other breaches, has failed: (1) to pay the mandatory annual $15,000 fee for several years; (2) to pay the correct variable royalty fee based on net sales for several years; (3) to pay any contractually mandatory penalty fees for late payments; (4) to properly account to or otherwise communicate with the Foundation in accordance with the License Agreement or with commercial reasonableness; (5) to limit its use of the Foundation Trademarks to "soil bags produced and related products" as set forth in the License Agreement ("Unrelated Products"); (6) to cease authorized use of the licensed "SQUARE FOOT GARDENING" trademark upon receipt of the Foundation's termination notices in accordance with the License Agreement; and (7) to allow the Foundation to audit Gro-Well's books and records pursuant to the License Agreement. Instead, Defendants routinely provided the Foundation with incorrect information and repeatedly refused to meet with the Foundation's auditors after promising to do so.

39.     Upon information and belief, Gro-Well's breaches of the Licensing Agreement were undertaken with Langer's participation and pursuant to his influence, direction and control.

40.     Virtually all of the communications, statements and payments by Gro-Well to the Foundation were made or disseminated by Langer, either personally or through an attorney, and were typically late, incomplete, filled with false promises and riddled with errors.

41.    Although many of the Foundation's requests for information or to open a dialogue were ignored by Langer, when he did respond Langer frequently unduly pressured, strung along, and bullied the Foundation and its representatives, including Bartholomew.

42.    Langer also unilaterally demanded and, in some cases, apparently implemented changes the terms of the License Agreement to the Defendants' benefit despite the express language of the License Agreement prohibiting him or Gro-Well from doing so without the Foundation's written consent.

43.    As a result of the foregoing acts and omissions by Defendants, the Foundation terminated the License Agreement with Gro-Well by written notices dated October 24, 2017 and October 30, 2017.

44.    In addition to the reasons set forth in the Foundation's notices of termination, the sale of Gro-Well to the Global Environment Fund, that Defendants did not disclose to the Foundation, is another basis for the Foundation to terminate the License Agreement.

45.    In its termination notices, the Foundation further demanded that Gro-Well cease and desist using all of the Foundation Trademarks, Bartholomew's name and likeness as well as all other intellectual property belonging to the Foundation.

46.    In a limited response to the Foundation's termination notices, with respect to only several of the Foundation's charges, the Defendants notably admitted that: (i) Gro-Well failed to provide the Foundation with records related to the sale of Defendants' Unrelated Products and associated royalties owed to the Foundation; (ii) Gro-Well willfully breached certain material terms of the License Agreement, including failing to pay the required annual license fee; and (iii) Gro-Well would continue breaching the License Agreement.

*Defendants' Unauthorized Use of the Foundation Trademarks*

47.    During the term of the License Agreement and thereafter, Defendants regularly featured several Foundation Trademarks and Bartholomew's name and likeness in connection with the sale to the public of at least the following products: (i) GRO-WELL

Square Foot Garden Potting Soil Mix, (ii) GardenTime SFG Potting Soil Mix, and (iii) Nature's Way SFG Potting Soil Mix.

48.     In late 2016, the Foundation first discovered that Gro-Well had started to use the Foundation Trademarks alongside marks that, upon information and belief, are owned and controlled by Defendants and in connection with its marketing of goods which were outside the scope of the License Agreement ("soil bags produced and related products") including, without limitation, Square Foot Gardening grid kits and gardening books ("Unrelated Products").

49.     Defendants' use of the Foundation marks in connection with Unrelated Products was done without the Foundation's permission or consent and, upon information and belief, the Foundation has never been compensated for Gro-Well's sale of the Unrelated Products.

50.     Examples of Defendants' improper use of the Foundation Trademarks for commercial purposes, after the termination of the License Agreement and/or in connection with Unrelated Products may be found on Gro-Well's website (https://www.gro-well.com/;     https://www.gro-well.com/square-foot-gardening/square-foot-gardening-2/;  https://www.gro-well.com/square-foot-gardening/mels-mix/), at least as recently as December 12, 2017, and are shown as follows:







12

51.     Defendants' use of the Foundation Trademarks after the term of the License Agreement and/or in connection with Unrelated Products was without the Foundation's permission or consent and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods, products, or services are associated, affiliated, or connected with the Foundation, or have the sponsorship, endorsement, or approval of the Foundation.

52.     There is a greater likelihood of confusion and deception due to the fact that the Foundation's commercial activities using the Foundation Trademarks are provided or intended to be provided in connection with the same product classes and to the same prospective customers as are Defendants' goods.

53.     Defendants have used and continue to use Foundation's Registered Marks, and names confusingly similar to them after termination of the License Agreement and in connection with Unrelated Products in violation of 15 U.S.C. § 1114.

54.     Defendants' activities have caused and, unless enjoined by this Court, will continue to cause, a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiff's goodwill and reputation as symbolized by the Foundation Trademarks, for which Plaintiff has no adequate remedy at law.

55.     Defendants' aforementioned actions constitute willful and intentional infringement of the Foundation's Registered Marks in violation of 15 U.S.C. § 1114.

56.     Defendants' aforementioned actions have caused, and unless enjoined by this Court, will continue to cause, serious and irreparable injury and damage to the Foundation, for which the Foundation has no adequate remedy at law.

57.     Defendants had either actual notice or constructive notice of the Foundation's Registered Marks pursuant to 15 U.S.C. § 1072 prior to their adoption, use, and sale of goods, products, or services after the termination of the License Agreement and/or in connection with Unrelated Products.

58.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Foundation's Registered Marks thus entitling

the Foundation to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and attorneys' fees pursuant to 15 U.S.C. §§ 1114, 1116, and 1117.

59.    Upon information and belief, Defendants acted in bad faith by using the Foundation Trademarks after the term of the License Agreement and in connection with Unrelated Products.

60.    Upon information and belief, Defendants are using the Foundation Trademarks as described above in an attempt to trade on the enormous goodwill associated with the Foundation Trademarks and the "Square Foot Gardening" brand.

61.    Upon information and belief, Defendants have used and are using the Foundation Trademarks as described above to identify and attract attention to their products and business at the Foundation's expense.

62.    All sales of Defendants' goods under the Foundation Trademarks through channels other than retail stores, regardless of date, are in violation of the License Agreement and, as a result, infringe upon the Foundation's trademark rights in each of the relevant Foundation Trademarks.

63.    All sales of Defendants' Unrelated Products, including Square Foot Gardening grids, gardening books, and other products not related to soil bags, regardless of the date, are in violation of the License Agreement and, as a result infringe upon the Foundation's trademark rights in each of the relevant Foundation Trademarks.

## COUNT 1 - BREACH OF CONTRACT
### (Against Gro-Well)

64.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 63 as if fully set forth herein.

65.    The License Agreement between the Foundation and Gro-Well was a valid and enforceable contract until it was terminated by the Foundation by letters dated October 24, 2017 and October 30, 2017.

66.     Defendant Gro-Well has failed or refused to perform their material obligations under the License Agreement by, among other reasons: (1) not paying the mandatory annual $15,000 fee for several years; (2) not paying the correct variable royalty fee based on net sales for several years; (3) not paying any penalty fees or interest for late payments; (4) not accounting to or otherwise communicating with the Foundation in accordance with the License Agreement or with commercial reasonableness; (5) selling Unrelated Products in violation of the "Licensed Products" provision of the License Agreement; (6) not ceasing use of the licensed "SQUARE FOOT GARDENING" trademark in accordance with the terms of the License Agreement upon receipt of the Foundation's termination notices; and (7) not allowing the Foundation to audit Gro-Well's books and records pursuant to the License Agreement and, instead, routinely providing the Foundation with obfuscation and refusals to meet with the Foundation's auditors after promising to do so.

67.     The Foundation has fully performed all of its duties and obligations under the License Agreement.

68.     Upon information and belief, Gro-Well continued to use the Foundation Trademarks after the inventory of "Licensed Products" that existed at the time of its receipt of the termination notices had been exhausted.

69.     As a direct and proximate result of Gro-Well's breach of the License Agreement, the Foundation has suffered and continues to suffer damages in an amount to be determined at trial, but which exceeds $75,000.00, exclusive of interest and costs.

70.     The Foundation is entitled to costs and attorneys' fees under Ariz. Rev. Stat. §§ 12-341 and 12-341.01 in this matter.

## COUNT II - BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against Gro-Well)

71.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 70 as if fully set forth herein.

72.     In breaching the License Agreement, Defendant Gro-Well has acted in bad faith to the detriment of the Foundation and its business.

73.     Gro-Well's acts in bad faith constitute material breaches of the implied covenant that they would act in good faith and deal fairly with the Foundation, with whom it had a contractual relationship and to whom it owed such a duty of good faith and fair dealing.

74.     As a direct and proximate result of Gro-Well's breach of the implied covenant of good faith and fair dealing, the Foundation has suffered and continues to suffer damages in an amount to be determined at trial.

75.     Gro-Well's bad faith actions in breach of the implied covenant of good faith and fair dealing were willful and wanton and in reckless disregard for the Foundation's rights, entitling the Foundation to punitive damages.

76.     The Foundation is entitled to costs and attorneys' fees under Ariz. Rev. Stat. §§ 12-341 and 12-341.01 in this matter.

**COUNT III - BREACH OF CONTRACT: POST TERMINATION
USE OF TRADEMARKS**
**(Against Gro-Well)**

77.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 76 as if fully set forth herein.

78.     The Foundation's Registered Marks are registered with the USPTO.

79.     Pursuant to the express terms of the License Agreement, Gro-Well was obligated to immediately cease all use of the lone, licensed Foundation Trademark ("Square Foot Gardening") in connection with "soil bags produced and related products," - "Licensed Products," as defined in the License Agreement - after selling off existing inventory.

80.     Pursuant to the License Agreement, subject to selling off existing inventory of "Licensed Products" bearing the authorized Foundation Trademark, Gro-Well was further obligated to discontinue all use of any of the other Foundation Trademarks and any confusingly similar term used as a mark.

81.    Despite Gro-Well's obligations, upon information and belief, Gro-Well has continued to use the Foundation Trademarks, including the Foundation's Registered Marks and other marks consisting of confusingly similar terms, after termination of the License Agreement in violation of the terms of that agreement.

82.    By reason of the foregoing, Gro-Well's infringement is willful.

83.    The Plaintiff is, therefore, entitled to injunctive relief against Gro-Well, restraining Gro-Well from any further acts of infringement of the Foundation's Registered Marks, and the recovery of monetary damages sustained as a result of the Gro-Well's unlawful conduct in an amount to be proven at trial, but which includes three times Gro-Well's profits and the Foundation's damages, as well as the costs of this suit and attorneys' fees pursuant to 15 U.S.C. §1117.

84.    The Foundation is further entitled to costs and attorneys' fees under Ariz. Rev. Stat. §§ 12-341 and 12-341.01.

### COUNT IV – REGISTERED TRADEMARK INFRINGEMENT UNDER SECTION 32 OF THE LANHAM ACT, 15 U.S.C. §1114
**(Against all Defendants)**

85.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 84 as if fully set forth herein.

86.    Upon the registration, the Foundation's Registered Marks obtained the following: (i) a statutory presumption that: (a) the marks are valid, (b) the Foundation is the owner of the marks, and (c) the Foundation has the exclusive right to use the registered marks; (ii) a presumption that the marks are non-functional, inherently distinctive and have acquired secondary meaning in the marketplace; (iii) that the Foundation has notice of a claim of ownership, eliminating any justification or defense of good faith adoption and use made by a third party after the registration date; and (iv) the Foundation is entitled to nationwide priority based on the filing date.

87.    Defendants' use of the Foundation's Registered Marks in connection with Defendants' goods outside of the term and/or scope of the License Agreement, including the sale of Unrelated Products, is likely to cause confusion, to cause mistake, and to deceive as to the source, origin or sponsorship of the Defendants' goods.

88.    Defendants' use of the Foundation's Registered Marks in connection with Defendants' goods outside of the term and/or scope of the License Agreement, including the sale of Unrelated Products, in the same channels as are used by the Foundation, is likely to cause the public to wrongly associate the Foundation with Defendants, to believe that the Foundation is somehow affiliated or connected with Defendants' goods, and/or to confuse Defendants and their goods with those of the Foundation.

89.    Defendants' use of the Foundation's Registered Marks in connection with Defendants' goods beyond the term and/or scope of the License Agreement, including the sale of Unrelated Products, constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

90.    Defendants' use of the Foundation's Registered Marks in connection with Defendants' goods beyond the term and/or outside the scope of the License Agreement, including the sale of Unrelated Products, has caused the Foundation irreparable injury for which it has no adequate remedy at law.

91.    By reason of the foregoing, Defendants' infringement is willful.

92.    The Plaintiff is, therefore, entitled to injunctive relief against Defendants, restraining Defendants from any further acts of infringement of the Foundation's Registered Marks, and the recovery of monetary damages sustained as a result of the Defendants' unlawful conduct in an amount to be proven at trial, but which includes three times Defendants' profits and the Foundation's damages, as well as the costs of this suit and attorneys' fees pursuant to 15 U.S.C. §1117.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT V - UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)
**(Against all Defendants)**

93.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 92 as if fully set forth herein.

94.    Defendants' use of the Foundation's Registered Marks, including beyond the term and/or scope of the License Agreement and in connection with Unrelated Products, falsely suggests that their goods, products, or services are connected with, sponsored by, affiliated with, or related to Plaintiff and constitutes unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

95.    Defendants' use of the Foundation's Registered Marks, including beyond the term and/or scope of the License Agreement and in connection with Unrelated Products, constitutes willful, deliberate, false, and misleading representations of fact as to the right of Defendants to use the Foundation's Registered Marks in violation of Section 43(a)(1)(B) of the Trademark Act of 1946, 15 U.S.C. §1125(a)(1)(B).

96.    Due to the unfair nature of Defendants' actions, Defendants have caused and, unless enjoined by this Court, will continue to cause, serious and irreparable injury and damage to the Foundation, for which the Foundation has no adequate remedy at law.

97.    Defendants had either actual notice or constructive notice of the Foundation's Registered Marks pursuant to 15 U.S.C. § 1072 prior to their unauthorized adoption, use, and sale of goods, products, or services with the Foundation's Registered Marks.

98.    Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Foundation's Registered Marks thus entitling the Foundation to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and attorneys' fees pursuant to 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT VI - COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
### (Against All Defendants)

99.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 98 as if fully set forth herein.

100.    The Foundation Trademarks have acquired special significance whereby the public identifies the Foundation as the source of the goods and services associated with the Foundation Trademarks.

101.    Defendants' marketing, selling, offering for sale, and/or distributing their own goods and services under marks identical to or confusingly similar to the Foundation Trademarks without authorization creates a likelihood of consumer confusion and inducement to believe that the Defendants' products are the Foundation's products.

102.    Upon information and belief, Defendants committed these acts of common law trademark infringement and unfair competition willfully, maliciously, in bad faith, and in conscious disregard of the Foundation's rights with the intent to injure the Foundation.

103.    Defendants' actions described above violate the Foundation's common law trademark rights and constitute unfair competition under Arizona Law.

**104.**    As a direct and proximate consequence of Defendants' actions, the Foundation has suffered irreparable injury that will continue and increase unless Defendants are preliminarily and permanently enjoined from its unlawful conduct.

## COUNT VII - DECEPTIVE TRADE PRACTICES UNDER ARIZONA LAW
### (Against All Defendants)

105.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 104 as if fully set forth herein.

106.    Defendants' use of the Foundation Trademarks beyond the term and/or outside the scope of the License Agreement, including the sale of Unrelated Products, falsely suggests that their goods, products or services are connected with, sponsored by,

affiliated with, or related to the Foundation and constitutes a deceptive trade practice under Ariz. Rev. Stat. § 44-1522.

107.    Due to the unfair nature of Defendants' actions, Defendants have caused and, unless enjoined by this Court, will continue to cause, the Foundation serious and irreparable injury and damage for which the Foundation has no adequate remedy at law.

108.    Defendants had either actual notice or constructive notice of the Foundation Trademarks prior to their adoption, use, and sale of the infringing goods or services and name.

109.    Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Foundation Trademarks thus entitling the Foundation to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits, and damages, costs, and attorneys' fees.

## COUNT VIII – CONVERSION
### (Against All Defendants)

110.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 109 as if fully set forth herein.

111.    The Foundation has immediate and superior rights to the fees and royalties owed to it by Defendants under the License Agreement and to the sums collected by the Defendants in connection with the sale of Unrelated Products, the amount of which is specifically identifiable and traceable, which rights are absolute.

112.    Defendants have intentionally exercised, and continue to exercise, dominion and control over some or all of the Foundation's fees, royalties, and other monies due or belonging to the Foundation by refusing to give up possession of said fees, royalties and other monies to the Foundation on demand, which refusal seriously interferes with the Foundation's rights arising under the License Agreement and otherwise.

113.    Defendants have converted the Foundation's fees, royalties and other monies into Defendants' own use.

114.    By reason of the foregoing, Defendants are liable to the Foundation for conversion under common law and Ariz. Rev. Stat. §12-542.

115.    As a result of Defendants' actions, the Foundation is entitled to compensatory and exemplary damages in an amount to be determined at trial.

## COUNT IX - UNJUST ENRICHMENT
### (Against All Defendants)

116.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 115 as if fully set forth herein.

117.    The Foundation provided Defendants with goods, services and property while expecting to be compensated in return.

118.    Defendants knew of the Foundation's expectation and accepted and benefitted from the goods, services and property that the Foundation provided to them.

119.    It is inequitable and unconscionable for Defendants to be allowed to enjoy and reap the benefit of the Foundation's actions and contributions without compensating the Foundation.

120.    By reason of the foregoing, Defendants have been, and continue to be, unjustly enriched to the Foundation's detriment.

## COUNT X - FOR AN ACCOUNTING
### (Against Gro-Well)

121.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 120 as if fully set forth herein.

122.    The License Agreement established a trust-based contractual relationship between Gro-Well and the Utah Corporation, which subsequently assigned its rights thereunder to the Foundation.

123.    The License Agreement covers the general subject matter of this controversy and acts described herein.

124.    Under the License Agreement, the Foundation has the right to audit Gro-Well's records to verify the accuracy Gro-Well's statements and payments of royalties.

125.    Further pursuant to the License Agreement, if the Foundation's audit revealed that it was underpaid then any deficiency must be paid by Gro-Well along with interest at the rate of twelve (12%) percent per annum from the date such royalty was sue and, in the event that the Foundation was underpaid by more than ten (10%) percent of the royalties due in any quarterly period, Gro-Well would also responsible for the cost of Plaintiff's audit.

126.    In response to the Foundation's request for records, Gro-Well periodically submitted to several Excel spreadsheets (the "Accountings") purported to set forth Gro-Well's payment obligations under the Agreement.

127.    The Foundation determined the Accountings were grossly deficient and requested that Gro-Well cooperate with its representatives so that the Foundation would be able to conduct a proper audit.

128.    Gro-Well failed to adequately respond to the Foundation's repeated requests to audit Gro-Well's books and records within a reasonable time frame, if at all.

129.    The Foundation has a contractual right to an accurate accounting of Gro-Well's books and records concerning goods, including Unrelated Products, sold during the term of the License Agreement and thereafter.

130.    Plaintiff's compensation under the License Agreement relied on the sale of Gro-Well's goods, and, upon information and belief, the Accountings significantly underrepresented the accurate amount due and owing to Plaintiff thereunder.

131.    As a result, Gro-Well owes the Foundation a complete and accurate accounting with respect to all sums due the Foundation from sales of goods and services bearing any Foundation Trademarks and should be required to allow the Foundation to audit Gro-Well's books and records reflecting such sales forthwith.

## PRAYER FOR RELIEFs

WHEREFORE, Plaintiff, Square Foot Gardening Foundation, Inc., prays for judgment against Defendants as follows:

A.    With respect to Counts I, II, VII and IX:

Awarding the Foundation the total amount of unpaid fees, royalties, interest, and penalties due from Gro-Well pursuant to the License Agreement.

B.    With respect to Counts III, IV, V, VI and VII:

i.    That Defendants' actions constitute willful trademark infringement, unfair competition, false designation of origin, and deceptive trade practices, as applicable, under Federal and Arizona Statutes and/or common law;

ii.    That Defendants and their agents, officers, directors, servants, employees, successors and assigns, and all other parties in active concert or participation with the Defendants be preliminarily and permanently enjoined from directly or indirectly:

1.    Using the Foundation Trademarks, or other logos, designs, artwork, or trademarks that are similar to the Foundation Trademarks;

2.    Holding themselves as or otherwise representing themselves to be the owners of, or otherwise authorized to use the Foundation Trademarks;

3.    Performing any actions or using any words, names, styles, titles or marks which are likely to cause confusion, to cause mistake, or to deceive, or to otherwise mislead the trade or public into believing that the Foundation

Trademarks and the Defendants are related or in any way connected;

4.   Using any words, names, marks that create likelihood of injury to the reputation of the Plaintiff Foundation; and

5.   Engaging in any other practices that will tend to unfairly compete with or injure the Foundation's business and its goodwill appurtenant thereto;

iii.   That Defendants be required to destroy, remove, or deliver for destruction all products, brochures, signs, packaging, promotional materials, and other written, printed, or electronic materials that bear the Foundation Trademarks;

iv.   That the Foundation recover the Defendants' profits and the damages arising from the Defendants' acts of trademark infringement and unfair competition pursuant to 15 U.S.C. §1117(a), as applicable; and

v.   An award of treble damages pursuant to 15 U.S.C. §1117(b), as applicable.

C.   With respect to Count X:

That the Court order an accounting with respect to all uses by Gro-Well of the Foundation Trademarks in connection with the sale of goods;

D.   With respect to all Counts:

i.   Awarding attorneys' fees and costs incurred herein against Defendants pursuant to the License Agreement, Ariz. Rev. Stat. §§12-341 and 12-341.01, and/or 15 U.S.C. §1117(a) (or any other applicable law);

ii.   Award to the Foundation of its damages in an amount to be proven at trial;

iii.   As allowed by law, award special, exemplary and/or punitive

1  damages against Defendants in an amount to be determined at

2  trial;

3  iv.    pre-judgment and post-judgment interest; and

4  v.    For such other and further relief as the Court deems just and

5  proper.

6  ## JURY DEMAND

7  Pursuant to Federal Rule of Civil Procedure 38, Plaintiff Square Foot Gardening

8  Foundation hereby demands trial by jury of all issues so triable.

9  DATED this 9th day of February, 2018.

10  **ALCOTT LAW GROUP**

11

12  By:    ____s/James E Doherty_____

13  James E. Doherty, Counsel
   *Pro Hac Vice*

14  205 East 42nd Street, 16th Floor
   New York, NY 10017

15

16  **Attorneys for Plaintiff**

17

18

19

20

21

22

23

24

25

26

27

28